IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CLEON THELTON DAY, III,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>1:17-CV-00252-WSD-CMS |

**FINAL REPORT AND RECOMMENDATION**

Plaintiff Cleon Thelton Day III ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). For the reasons set forth below, I **RECOMMEND** that the Commissioner's decision be **REVERSED AND REMANDED** for additional proceedings not inconsistent with this Report and Recommendation.

**I.     FIVE-STEP SEQUENTIAL EVALUATION**

A claimant is considered disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment that is expected to result in death or has lasted or is expected to last for a continuous period of not less than twelve months.  See 42 U.S.C. § 1382c(a)(3)(A).  The burden of proving disability lies with the claimant.  See 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  To determine whether the claimant has met his burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations (the "Regulations").  See 20 C.F.R. § 416.920; Dixon v. Astrue, 312 F. App'x 227, 227-28 (11th Cir. 2009); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

At step one, the claimant must prove that he has not engaged in substantial gainful activity.  See 20 C.F.R. § 416.920(b).  At step two, he must demonstrate a severe impairment or combination of impairments.  See 20 C.F.R. § 416.920(c).  Then, at step three, if the claimant's impairment meets or medically equals a listed impairment, he is automatically found disabled.  See 20 C.F.R. § 416.920(d).  If not, he must advance to step four.  See 20 C.F.R. §§ 416.920(e), (f).  At that step, the claimant's residual functional capacity ("RFC") and ability to return to his past relevant work is assessed.  See Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments."  Id. (citing 20 C.F.R. § 404.1545(a)); Moore v. Comm'r of Soc. Sec., 478 F. App'x 623, 624 (11th Cir.

2012). If the claimant can perform past relevant work, he will be found not disabled. See 20 C.F.R. § 416.920(f). If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." Moore, 478 F. App'x at 624. If the claimant can perform such other work, he will be found not disabled. See 20 C.F.R. § 416.920(g). If he cannot, he will be found disabled. Id.

The issue in this appeal is whether the ALJ committed reversible error in failing to evaluate the following evidence in her decision: (1) the records of Christine Lloyd, MHA, a mental health technician at Grady Hospital and Plaintiff's case manager from September 2013 through December 2014; and (2) the records of Dana Abraham, LMSW, a senior licensed mental health clinician at Grady Hospital and the facilitator of Plaintiff's weekly outpatient depression group from September 2013 through November 2013.

## II.  BACKGROUND

Plaintiff and the Commissioner have set forth details of Plaintiff's medical history in their respective briefs. Each has emphasized different aspects of that history; however, neither party has objected to the facts as set forth by the other. I have considered all of these facts and do not find it necessary to repeat the medical

evidence in the same level of detail as Plaintiff and the Commissioner. The relevant points are discussed below.

On October 12, 2012, Plaintiff applied for SSI benefits. [Doc. 8, Transcript ("Tr.") 224-32]. On October 30, 2012, Plaintiff applied for a period of disability and DIB. [Tr. 217-23]. In both applications, Plaintiff alleged a disability onset date of June 1, 2010. [Tr. 217, 224]. Plaintiff applied for these benefits based on the allegation that he was suffering from diabetes, high blood pressure, and depression. [Tr. 62, 74, 88, 102]. The Social Security Administration denied Plaintiff's applications initially on January 30, 2013, and upon reconsideration on April 4, 2013. [Tr. 60-115]. On April 18, 2013, Plaintiff requested a hearing before an administrative law judge ("ALJ") [Tr. 137], and the ALJ held a hearing on July 21, 2015, in Atlanta, Georgia [Tr. 32-56]. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Joe Mann, a Vocational Expert. [Tr. 32-56].

On October 20, 2015, the ALJ issued her decision, finding that Plaintiff was not disabled under the Social Security Act. [Tr. 13-31]. Applying the sequential process required under 20 C.F.R. § 416.920, the ALJ made the following findings. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2010, the alleged onset date. [Tr. 18]. At step two,

the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, diabetes mellitus, hypertension, obesity, and gastroesophageal reflux disease. [Tr. 18-19]. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 19-21].

The ALJ went on to determine that Plaintiff had the RFC to perform less than a full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following limitations: occasionally lift fifty pounds and frequently lift twenty-five pounds; never climb ropes, ladders, and scaffolds due to symptoms of fatigue and medication side effects; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl, and balance; avoid concentrated exposure to extreme vibrations, hazardous machinery, and unprotected heights; perform simple, routine, repetitive tasks in a work environment free of fast-paced production requirements; make simple work decisions (with few, if any, workplace changes); occasionally interact with co-workers, supervisors, and the public; and be off task up to ten percent of the workday. [Tr. 21-25]. In doing so, the ALJ evaluated the credibility of Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of his pain and other symptoms. [Id.].

Importantly, for purposes of this appeal, the ALJ noted that "there were few treatment records" with respect to Plaintiff's mental impairments. [Tr. 22].

The record evidence shows that Plaintiff consistently met in-person with Christine Lloyd, a mental health technician at Grady Hospital and Plaintiff's case manager, twice a month from September 2013 through December 2014. [Tr. 518-19, 522-24, 528-30, 568-72, 584-86, 592-95, 600-01, 605-06, 619-22, 625-42, 646-50, 656-61, 670-83, 689-90, 695-96]. Ms. Lloyd's role, in part, was to "educate [Plaintiff] on how to develop more effective coping skills and better manage behavioral health symptoms through the effective utilization of community resources, individual therapy and/or group therapy/training." [Tr. 523, 585, 605, 619, 632, 634, 639-40, 682]. Ms. Lloyd also noted that she would "provide necessary services to assist [Plaintiff] in his efforts to obtain community services, such as financial, transportation and support to help reduce environmental stressors[.]" [Tr. 594, 621, 625, 627-28, 641]. At each visit, Ms. Lloyd documented Plaintiff's mental and physical state and provided a short summary of their discussions. [Tr. 518-19, 522-24, 528-30, 568-72, 584-86, 592-95, 600-01, 605-06, 619-22, 625-42, 646-50, 656-61, 670-83, 689-90, 695-96]. At various visits, Ms. Lloyd noted that Plaintiff was sweating [Tr. 529, 637], his speech was pressured [Tr. 529, 569, 594, 600, 605, 619, 621, 627, 631, 637, 639], he presented

with poor concentration and poor memory [Tr. 594, 628, 640-41], he made limited or poor eye contact [Tr. 529, 592, 600, 605, 631], and his mood appeared depressed or anxious at times. [Tr. 569, 571, 592, 600, 619, 628, 635, 650, 659, 689]. Ms. Lloyd and Plaintiff often discussed the status of his disability case [Tr. 519, 523, 689], education on diabetes and hypertension [Tr. 529, 586, 619-20, 626], housing options [Tr. 529, 592, 600, 606, 619-20, 626-29, 638, 647, 649-50, 658], and other issues with respect to obtaining food stamps, identification cards, and medication [Tr. 519, 571, 621-22, 633].

The record evidence also shows that Plaintiff attended a weekly outpatient depression group that was led by Dana Abraham, a senior licensed mental health clinician with Grady Hospital, between September 2013 and November 2013. [Tr. 515-17, 519-22, 524-25, 530-31, 541-50, 553-55, 560-61]. Ms. Abraham noted that Plaintiff "expressed difficulty with [the] ability to maintain positive thoughts related to [his] current living environment." [Tr. 516]. Ms. Abraham noted that Plaintiff was "regarded to have difficulty with interpersonal interactions[.]" [Tr. 517]. On November 11, 2013, Ms. Abraham noted that Plaintiff "was observed to be sad with blunted affect." [Tr. 545]. The following day, Ms. Abraham again noted that Plaintiff "was observed to be sad with blunted affect." [Tr. 546]. During that session, Ms. Abraham noted that Plaintiff "required frequent

redirection regarding treatment goals as he was circumstantial in his thoughts and speech." [Tr. 547]. Ms. Abraham noted that Plaintiff had "a history of challenges with interpersonal relationships and is regarded to have some significant [n]arcicisstic [*sic*] traits as evidenced by his report of interactions and behavior in group setting (i.e. [e]xploitative of others, arrogant, grandiose re past titles and work experience, regards himself as special, entitled)." [Tr. 547]. That same day, Plaintiff reported "experiencing frequent thoughts of suicide and death" over the last one to two years. [Tr. 548, 550]. Ms. Abraham explained that Plaintiff's symptoms of depression were "exacerbated by his personality structure re his beliefs about himself and the world." [Tr. 549].

The ALJ did not mention Ms. Lloyd or Ms. Abraham's records in her decision, simply stating that "there were few treatment records" with respect to Plaintiff's mental impairments. [Tr. 22].

In light of her RFC finding, the ALJ noted that Plaintiff "is unable to perform any past relevant work" but that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" [Tr. 25]. Accordingly, the ALJ concluded that Plaintiff was not disabled from June 1, 2010, his alleged disability onset date, through the date of the ALJ's decision. [Tr. 26]. Following the ALJ's October 20, 2015 adverse decision, Plaintiff requested that

the Appeals Council review the ALJ's decision, arguing that the decision contained errors of law and fact. [Tr. 10-12]. On November 22, 2016, the Appeals Council denied Plaintiff's request for review, declining to review the ALJ's decision. [Tr. 1-6]. When the Appeals Council denied Plaintiff's request, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(g). On January 23, 2017, Plaintiff timely filed this civil action, requesting reversal of the Commissioner's adverse decision. [Docs. 1, 3].

### III.   LEGAL STANDARD

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. See 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the court will affirm "[e]ven if the evidence preponderates against the Commissioner's

findings[.]" Id. at 1158-59.  In reviewing the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  See Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 782 (11th Cir. 2014); Barnes v. Sullivan, 932 F.2d 1356, 1357-58 (11th Cir. 1991).

## IV.  DISCUSSION

On appeal, Plaintiff argues, among other things, that the ALJ erred in concluding that there were "few treatment records" with respect to Plaintiff's mental impairments, because the ALJ disregarded the records containing Ms. Lloyd and Ms. Abraham's impressions and notes.  [Doc. 15 at 16-19].  Plaintiff argues that the ALJ was required to consider those records when assessing Plaintiff's mental limitations and that her failure to do so constitutes reversible error.  [Id.].  Upon my independent review of the ALJ's decision and the record evidence, I find that it is unclear whether the ALJ considered the records containing Ms. Lloyd and Ms. Abraham's impressions and notes, and therefore I cannot determine on the record before me whether substantial evidence supports the ALJ's findings.  Accordingly, the case must be remanded.

**A.    Failure to Evaluate Ms. Lloyd and Ms. Abraham's Records**

The plaintiff has the burden of providing medical and other evidence about his impairments for the ALJ to use in reaching her conclusions.  See 20 C.F.R.

§ 416.912(a). The Regulations direct the ALJ to "consider all evidence in [the claimant's] case record when [making] a determination or decision whether [the claimant is] disabled." 20 C.F.R. § 416.920(a)(3). An ALJ may not pick and choose which evidence she considers in making the disability determination. See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986) (the administrative decision "must take into account and evaluate the record as a whole"); Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1285 (11th Cir. 2004) ("[T]he general policy permeating these regulations is that ALJs should consider all available evidence, including nonmedical evidence.").

At issue here are the records of Ms. Lloyd and Ms. Abraham. Plaintiff argues that these are "non-acceptable other medical source[s]" that the ALJ improperly ignored in her decision. [Doc. 15 at 18]. The Commissioner disagrees, arguing that "no acceptable medical source at Grady opined that Plaintiff had disabling mental limitations." [Doc. 18 at 13]. I conclude that even if Ms. Lloyd and Ms. Abraham are non-medical sources, the case must be remanded. The Regulations and rulings require that an ALJ consider all relevant evidence in the case record, including opinion evidence from non-medical sources. See 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The Regulations provide the following non-exhaustive list of acceptable non-medical sources:

>   (1) You;
>
>   (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
>
>   (3) Public and private social welfare agency personnel; and
>
>   (4) Family members, caregivers, friends, neighbors, employers, and clergy.

20 C.F.R. § 416.902(j).

It is evident from the record that Ms. Lloyd helped Plaintiff manage his affairs, assisted Plaintiff with finding housing, and educated Plaintiff on his medical conditions. [Tr. 519, 523, 529, 571, 586, 592, 600, 606, 619-22, 626-29, 633, 638, 647, 649-50, 658, 689]. The record also shows that Ms. Abraham facilitated at least ten depression group sessions that Plaintiff attended. [Tr. 515-17, 519-22, 524-25, 530-31, 541-50, 553-55, 560-61]. As a mental health technician and a senior licensed mental health clinician, Ms. Lloyd and Ms. Abraham appear to qualify as people employed by a "social welfare agency," which would make them acceptable non-medical sources whose opinions may be considered. See Johnson v. Astrue, No. 09-CIV-21793, 2010 WL 1410559, at *7-8 (S.D. Fla. Apr. 1, 2010) (finding that the plaintiff's case manager qualified as a public social welfare agency personnel and acceptable, non-medical source). As such, Ms. Lloyd and Ms. Abraham would be considered to be acceptable, non-

medical sources whose opinions may be entitled to deferential weight, depending upon the nature of the relationship and the supporting evidence. See, e.g., Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (non-medical sources include social welfare agency personnel); Moncrief v. Astrue, No. C08-0075, 2011 WL 4352726, at *11 (N.D. Iowa Sept. 16, 2011) (considering case manager to be an acceptable, non-medical source). As noted above, the ALJ did not mention either of these two individuals in her decision, and therefore, the ALJ did not make findings about whether either qualifies as an acceptable, non-medical source.

"While an ALJ is not required to discuss every piece of evidence on the record, [s]he must nonetheless 'develop a full and fair record,' which, at least, means that h[er] opinion must describe h[er] analysis with enough detail to satisfy a reviewing court that [s]he gave all of the relevant evidence before h[er] its due regard." Reed v. Astrue, Civil Action No. 09-0149-KD-N, 2009 WL 3571699, at *2 (S.D. Ala. Oct. 26, 2009) (citations omitted); see also Ogranaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 851 (11th Cir. 2006) ("We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimants' medical condition as a whole."). Moreover, "[a]lthough the ALJ should consider evidence from non-medical sources, the ALJ is not required to

assign the evidence any particular weight." Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 784-85 (11th Cir. 2016) (citation omitted); see also Reed, 2009 WL 3571699 at *3-4. "Instead, whether and how much weight the ALJ should give this kind of evidence depends upon the particular facts of the case and a variety of factors, including whether the opinion is consistent with other evidence in the record." Farnsworth, 636 F. App'x at 785 (citation omitted).

In this case, the ALJ stated that there were "few treatment records" with respect to Plaintiff's mental impairments, and she did not explicitly mention the records of either Ms. Lloyd or Ms. Abraham in her decision. [Tr. 22]. Plaintiff argues this is reversible error. [Doc. 15 at 17-19]. Although the Commissioner concedes that Ms. Lloyd "occasionally noted [Plaintiff's] mental health symptoms in her records," the Commissioner argues, in part, that the ALJ's failure to discuss Ms. Lloyd and Ms. Abraham's records does not constitute error because Ms. Lloyd and Ms. Abraham were not medical health care providers and were thus not acceptable medical sources. [Doc. 18 at 13-14]. This argument, however, ignores the fact that non-medical sources can be used to show the severity of a claimant's impairments as well as a claimant's functional capabilities. See Eggerson v. Astrue, 581 F. Supp. 2d 961, 966 (N.D. Ill. 2008) (while a physician's assistant was not an "acceptable medical source," he was still a valuable "other source" for

information regarding the severity of the claimant's impairment, treatment, and how such impairment can affect an individual's ability to function).

Ms. Lloyd met with Plaintiff in-person twice a month for fifteen months, from September 2013 through December 2014. [Tr. 518-19, 522-24, 528-30, 568-72, 584-86, 592-95, 600-01, 605-06, 619-22, 625-42, 646-50, 656-61, 670-83, 689-90, 695-96]. Plaintiff attended Ms. Abraham's weekly outpatient depression group from September 2013 through November 2013. [Tr. 515-17, 519-22, 524-25, 530-31, 541-50, 553-55, 560-61]. Both Ms. Lloyd and Ms. Abraham provided assessments of Plaintiff's mental condition after each visit or session, and they both documented any notable observations, including when Plaintiff exhibited a depressed or anxious mood [Tr. 569, 571, 592, 600, 619, 628, 635, 650, 659, 689] or when Plaintiff appeared sad with blunted affect [Tr. 545-46]. Importantly, Plaintiff reported "experiencing frequent thoughts of suicide and death" to Ms. Abraham during one of their sessions. [Tr. 548]. The ALJ, however, failed to even mention Ms. Lloyd and Ms. Abraham's impressions and notes in her decision, much less evaluate their assessments. Although these records provide some evidence that Plaintiff suffered from mental limitations that could have affected his ability to work during the relevant period, the ALJ stated that the there were "few treatment records" with respect to Plaintiff's mental impairments,

making it likely that the ALJ simply overlooked the records. [Tr. 22]. While the ALJ could have discounted these records, it is unclear whether that is what happened. The ALJ's failure to acknowledge the existence of these non-medical sources suggests an oversight on the part of the ALJ, requiring remand. See Baez v. Comm'r of Soc. Sec., 657 F. App'x 864, 870 (11th Cir. 2016) (holding that an ALJ's decision cannot be said to be supported by substantial evidence if it fails to discuss pertinent evidence).

While I recognize that the ALJ is not required to specifically refer to every piece of evidence in her decision, see Cox v. Astrue, Civil Action No. 10-00554-B, 2012 WL 1094443, at *9 (S.D. Ala. Mar. 30, 2012), it is not clear in this case whether the ALJ appropriately considered the "other source" evidence provided by Ms. Lloyd and Ms. Abraham. If the ALJ elected to discount these records, the ALJ should have provided an explanation for any decision to reject the assessments of Ms. Lloyd and/or Ms. Abraham regarding Plaintiff's mood and mental state. Because the ALJ failed to make that evaluation and failed to even refer to this evidence, the case must be remanded for reconsideration. See, e.g., Lucas v. Sullivan, 918 F.2d 1567 (11th Cir. 1990) (finding that ALJ's failure to consider the testimony of the claimant's daughter and neighbor warranted remand); Buchholtz v. Astrue, No. 12 C 7399, 2014 WL 683651, at *5-6 (N.D. Ill. 2014) (finding that

16

the ALJ improperly rejected the claimant's case workers' opinions and remanding the case to the Commissioner); Ladd ex rel. J.J.L.G. v. Colvin, Civil Action No. 13-00088-B, 2014 WL 1230255, at *7-10 (S.D. Ala. Mar. 25, 2014) (reversing and remanding the Commissioner's decision where the ALJ failed to consider non-medical evidence provided by the claimant's fifth grade teacher).

The Eleventh Circuit has determined that "[w]hen . . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008). An error may be considered harmless only when that error was irrelevant to the analysis or otherwise could not have altered the outcome of the dispute. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983). An error is not harmless if it is unclear whether the error affected the ALJ's determination. See Williams v. Astrue, No. 1:09-CV-02689-AJB, 2011 WL 1131328, at *15 (N.D. Ga. Mar. 28, 2011). While the failure to consider the report of a non-medical source may be found harmless, it is not clear from the record in this case why the ALJ omitted any reference to the records of Ms. Lloyd and Ms. Abraham. See Owens v. Heckler, 748 F.2d 1511, 1515-17 (11th Cir. 1984) (declining to affirm an ALJ's decision where it was unclear what test the ALJ used in reaching his conclusions and

17

concluding it was not proper to affirm simply because some rationale might have supported the ALJ's conclusions). Moreover, given the clear relevance of the impressions and notes in Ms. Lloyd and Ms. Abraham's records and the ALJ's reference to "few treatment records" to support Plaintiff's alleged mental impairments, it is not clear whether Ms. Lloyd and Ms Abraham's records would have altered the ALJ's conclusions regarding Plaintiff's mental impairments and/or changed the outcome of the decision. With no mention of Ms. Lloyd or Ms. Abraham's records in the ALJ's decision, I cannot determine if the ALJ adequately considered that evidence and properly weighed it.

Because it is impossible for the Court to determine whether the ALJ considered all of the evidence in the record, this case must be remanded. On remand, the ALJ must consider the opinions of all of Plaintiff's examining and treating medical sources, as well as the opinions of appropriate non-medical sources, and give the proper weight to the testimony and statements of each as required by the law of this Circuit. See Lewis v. Callahan, 125 F.3d 1436, 1440-41 (11th Cir. 1997); Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987). If the ALJ finds reason to disregard the opinions of non-medical sources, she must provide specific reasons for doing so, and these reasons must be supported by substantial evidence in the record.

## B. Plaintiff's Other Arguments

Plaintiff has raised other challenges to the ALJ's decision, including, but not limited to, Plaintiff's arguments regarding the ALJ's assignment of only "some weight" to the opinion of consultative examiner Anne Moore, Psy.D. and the ALJ's adverse credibility finding. [Doc. 15 at 14-24]. Because this case is due to be remanded for the reasons discussed above, the analysis of the ALJ may change. Therefore, I do not find it necessary, at this stage of the review process, to address Plaintiff's other arguments. Those arguments, however, should be considered by the ALJ on remand. See Diorio, 721 F.2d at 729 (on remand, the ALJ must reassess the entire record); Salamina v. Colvin, No. 8:12-CV-1985-T-23TGW, 2013 WL 2352204, at *4 (M.D. Fla. May 29, 2013) (stating that in view of the remand, it was unnecessary to address the plaintiff's other contentions).

When making a credibility determination on remand, the ALJ is reminded that the GAF scale has been abandoned as a measurement tool and recognized to have questionable value. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 16 (5th ed., 2013) (noting that it was recommended that the GAF scale be dropped "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). On remand, the

19

ALJ should consider all of Plaintiff's arguments and articulate the weight given to all of the relevant opinion evidence in the record as required by the Regulations.

## V.  CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the Commissioner's decision be **REVERSED** under sentence four of 42 U.S.C. § 405(g) and the case **REMANDED** to the Commissioner for additional proceedings not inconsistent with this Report and Recommendation.

**SO REPORTED AND RECOMMENDED**, this 26th day of December, 2017.

_____
Catherine M. Salinas
United States Magistrate Judge